# EXHIBIT 1

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MYRA POPAL, | Case No.: 1:26-cv-1819 |
| Plaintiff, | (Index No.: EF001198-2026) |
| -against- | |
| XAVIER UNIVERSITY SCHOOL OF MEDICINE, | **NOTICE OF REMOVAL** |
| Defendant. | |

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1447, Defendant Xavier University School of Medicine ("Xavier" or "Defendant"), by and through their undersigned attorneys of record, hereby remove to this Court the state action described herein from the Supreme Court of New York, Orange County, to the United States District Court for the Southern District of New York.  Pursuant to U.S.C. § 1446(d), copies of this Notice of Removal[1] shall be served on Plaintiff Myra Popal's ("Plaintiff") counsel at the addresses listed on Plaintiff's Supreme Court action (the "Supreme Court Action") and filed with the clerk of the Supreme Court. The specific grounds for removal are detailed below.

**INTRODUCTION**

On or about February 5, 2026, Plaintiff served a Summons and Complaint ("Complaint") against Xavier in the New York Supreme Court, Orange County.[2]

The Supreme Court Action purports to assert the following causes of action: (1) breach of contract; (2) unjust enrichment; and (3) violation of New York General Business Law §§ 349, 350.

---

[1]      Defendant reserves all rights, including but not limited to their right to raise defenses and objections as to venue and personal jurisdiction and to move to dismiss the Complaint.  This Notice of Removal shall not be construed as a waiver of these rights.  Defendant further reserves the right to amend or supplement this Notice of Removal.

[2]      A true and correct copy of the Complaint is annexed hereto as Exhibit 1.  A true and correct copy of the Notice of Electronic Filing is annexed hereto as Exhibit 2.

Ex. 1 at ¶¶ 44-75.  The causes of action alleged in the Complaint derive from Defendant's alleged conduct related to a scholarship award formerly awarded to Plaintiff.  *Id.* at ¶¶ 1, 14-43.

## BASIS FOR REMOVAL

### I.      Removal is Proper Because this Court Has Original Jurisdiction

Pursuant to 28 U.S.C. § 1332(a)(2), this Court has original subject matter jurisdiction over this dispute because: "(1) complete diversity[3] exists between the parties"; and "(2) the amount in controversy exceeds $75,000, exclusive of interest and costs."  *O'Neill v. Michaels Co., Inc.*, 2025 U.S. Dist. LEXIS 118010, *1 (S.D.N.Y. 2025); *Barrera v. Bethel*, 2023 U.S. Dist. LEXIS 211339, *2 (S.D.N.Y. 2023) (same) (citing 28 U.S.C. § 1332(a)(2)).

#### A.  Diversity of Citizenship

The requirement of complete diversity of citizenship, which exists if no plaintiff in an action is a citizen of the same state as any defendant, is satisfied here.  *See Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) ("The Supreme Court has interpreted 'citizens of different States' to grant jurisdiction only 'if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State'") (citing *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (U.S. 1998)).

An individual's citizenship, "within the meaning of the diversity statute, is determined by his domicile."  *Barrera*, 2023 U.S. Dist. LEXIS 211339, *2-3 (citing *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)); *Johnson v. Smithsonian Inst.*, 4 Fed. Appx. 69, 70 (2d Cir. 2001) (same) (citing *Palazzo*, 232 F.3d at 42).  Domicile is "the place where a person has 'his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'"

---

[3]      "The diversity of citizenship of the parties is determined at the time the action is commenced."  *Caldararo v. Kwokau*, 1983 U.S. Dist. LEXIS 13646, *1 (S.D.N.Y. 1983) (citing 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3608 (1975))

*Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) (citing Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3612, at 526 (2d ed. 1984)); *Chigirinskiy v. Panchenkova*, 252 F. Supp. 3d 379, 381 (S.D.N.Y. 2017) (same) (citing *Palazzo*, 232 F.3d at 42).

For diversity purposes, "[a] corporation is deemed a citizen of both its place of incorporation and the state where it maintains its 'principal place of business.'" *G.V. Trademark Invs., Ltd. v. Gemini Shirtmakers, Inc.*, 1999 U.S. Dist. LEXIS 16161, *2 (S.D.N.Y. 1999) (citing 28 U.S.C. § 1332(c)(1)); *Mazaya Trading Co. v. Li & Fung Ltd.*, 833 Fed. Appx. 841, 843 (2d Cir. 2020) (same) citing *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012)).

Here, complete diversity exists. As alleged in Plaintiff's Complaint, Plaintiff is a citizen of Minnesota. Ex. 1 at ¶ 8 ("Plaintiff resides in Minnesota State in Scott County"). Xavier is incorporated under the laws of Aruba[4] with a principal place of business in Aruba. Accordingly, because "no plaintiff in an action is a citizen of the same state as any defendant," (*Platinum-Montaur Life Scis., LLC*, 943 F.3d at 617), complete diversity exists under 28 U.S.C. § 1332(a)(2).

B. Amount in Controversy

The amount in controversy in the above-captioned action (the "Action") exceeds $75,000. To determine the amount in controversy, a court looks to the face of the complaint. 28 U.S.C § 1446(c)(2); *see also Milgrim Thomajan & Lee P.C. v. Nycal Corp.*, 775 F. Supp. 117, 121 (S.D.N.Y.

---

[4] Xavier is incorporated under the laws of Aruba pursuant to Book 2 of the Civil Code of Aruba. Burgerlijk Wetboek van Aruba, Boek 2, tit. 2, arts. 50–58 (2de ed. 2024) (Aruba). A true and correct copy of Xavier's Articles of Incorporation is annexed hereto as Exhibit 3. "Foundations" under Aruban law are governed by Title 2 (Articles 50–58), which require that a foundation be formed by notarial deed containing its statutes and be registered with the Aruba Chamber of Commerce. A foundation is "incorporated" under Book 2 of the Civil Code, when it is established by notarial deed containing its statutes (including its name, its purpose, and its method of board appointment), is registered with the Aruba Chamber of Commerce, and—once formed—constitutes a legal person under Aruban law. *Burgerlijk Wetboek van Aruba*, Boek 2, tit. 2, arts. 50–58 (2de ed. 2024) (Aruba). Xavier meets each of these requirements: its notarial deed contains all mandatory statutory elements, identifies its board-appointment structure, articulates its nonprofit purposes, and the entity is duly registered with the Aruba Chamber of Commerce. *See* Ex. 3.

1991) ("It is well established that the amount in controversy for purposes of diversity jurisdiction should be determined from the face of the complaint itself") (citing *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (U.S. 1961)).

Here, the amount in controversy exceeds $75,000. Plaintiff claims she is entitled to $85,000 in damages. Ex. 1 at pp. 11. Because the damages Plaintiff claims she is entitled to exceeds $75,000, the amount in controversy satisfies the requirements under 28 U.S.C. § 1332(a)(2).

**II.      Defendant Has Satisfied the Procedural Requirements for Removal**

Defendant's Notice of Removal satisfies the federal and local procedural requirements for removing a civil action from state to federal court. *See* 28 U.S.C. §1446; *see also Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York* (effective Jan. 2, 2025).

Defendant received a copy of the Complaint by electronic mail on February 5, 2026. This Notice of Removal is therefore timely filed pursuant to 28 U.S.C. §1446(b)(1), which provides that such notice must be filed within 30 days after the defendant's receipt of the complaint.

Further, this Court is the proper court to which to remove this action, as it is "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. §1446(a). Copies of this Notice of Removal are being filed with the Supreme Court of New York, Orange County and served upon Plaintiff. 28 U.S.C. §1446(d).

Dated: March 5, 2026                                Respectfully submitted,

                                                 **LUCOSKY BROOKMAN, LLP**

                                                 */s/ Willard Shih*
                                                 WILLARD SHIH, ESQ.
                                                 111 Broadway, Suite 807
                                                 New York, NY 10006

wshih@lucbro.com
(732) 510-5653

Donald E. Taylor, Esq.  (*pro hac vice*
forthcoming)
LUCOSKY BROOKMAN, LLP
101 Wood Avenue South
Woodbridge, NJ 08830
(732) 510-0604
dtaylor@lucbro.com

***ATTORNEY FOR DEFENDANT***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was electronically filed using the Court's electronic filing system this 5th day of March, 2026, and served upon all counsel of record via the same.

/s/ Willard Shih
WILLARD SHIH, ESQ.

# EXHIBIT 1

INDEX NO. EF001198-2026
RECEIVED NYSCEF: 02/05/2026

Case 7:26-cv-01818-NSR   Document 12-1   Filed 03/05/26   Page 8 of 33

SUPREME COURT OF THE STATE OF NEW YORK
ORANGE COUNTY

--------------------------------------------------------------------------------

MYRA POPAL,

                  Plaintiff,

               -against-

 

 

XAVIER UNIVERSITY SCHOOL OF MEDICINE
               Defendants.

--------------------------------------------------------------------------------

**SUMMONS**

Index. No. _____

Venue in Orange County is proper CPLR 503(a) as the County where Defendant's principal place of business is located, and the County designated by Plaintiff CPLR 509

To the above named Defendants:

You are hereby summoned and required to serve upon Plaintiff's attorneys an answer to the Complaint in this action within 20 days after service of this summons, exclusive of the date of service, or within 30 days after the service of this summons is complete, if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
       February 5, 2026

                          TULLY RINCKEY, PLLC

                          Hannah Lildharrie, Esq.
                          Tully Rinckey PLLC
                          420 Lexington Avenue, Ste. 1601
                          New York, New York 10170
                          Phone: (646) 813-2962
                          Fax (646) 705-0049
                          Email: hlildharrie@tullylegal.com

                          *Attorney for Plaintiff Myra Popal*

1

Case 7:26-cv-01818-NSR Document 2-1 Filed 03/05/26 Page 9 of 33

TO:     Ravishankar Bhooplapur
        1000 Woodbury Road, Suite 109
        Woodbury, New York 11797

2

SUPREME COURT OF THE STATE OF NEW YORK
ORANGE COUNTY
-------------------------------------------------------------------------------------------------

MYRA POPAL,

                    Plaintiff,

                -against-

XAVIER UNIVERSITY SCHOOL OF MEDICINE,

                    Defendant.

-------------------------------------------------------------------------------------------------

**VERIFIED COMPLAINT**

Index. No. _____

Plaintiff, MYRA POPAL, by and through her attorneys Tully Rinckey PLLC as and for its

Verified Complaint herein against Defendant XAVIER UNIVERSITY SCHOOL OF MEDICINE,

alleges as follows:

### NATURE OF CLAIMS

1. This action arises from Defendant's conduct related to its scholarship award, and

    Defendant's breach of contract, fraud, and violations of New York General Business Law §§

    349 and 350.

2. Unable to resolve these issues Plaintiff has no other option but to commence litigation.

### PARTIES

3. Defendant Xavier University School of Medicine is a Foreign Limited Liability Company in

    Woodbury with a principal place of business in Woodbury, New York, in the County of

    Orange.

4. Defendant is registered with the New York State Department of State.

5. Plaintiff, Myra Popal ("Plaintiff"), attended Xavier University School of Medicine.

1

## JURISDICTION & VENUE

6. This Court has jurisdiction over the Defendants and venue is proper.

7. Plaintiff is a natural person, attending Xavier University School of Medicine, which is headquartered in Woodbury, New York, in the County of Orange.

8. Plaintiff resides in Minnesota State in Scott County.

9. Defendant, an educational institution, has an admission office located at 1000 Woodbury Rd., Suite 109, Woodbury, NY 11797, advertises in New York State which is directed at New York State residents, and Xavier University School of Medicine seeks to attract students that are New York State residents, and does business in the state of New York.

10. Venue is proper in Orange County pursuant to CPLR 503(a) as the County where Defendant's principal place of business is located, and the County designated by Plaintiff CPLR 509.

## FACTUAL BACKGROUND

11. Plaintiff was a medical student at Xavier University School of Medicine ("University") from the Fall 2022 through December 2024.

12. Defendant publicly advertised on its website that it guaranteed financial support through its scholarship programs, and that its scholarships were renewable based on continued academic success to allow students to avoid the burden of making tuition or loan payments while enrolled.

13. Plaintiff relied on these representations, which materially factored into her decision to attend Defendant's University.

2

Case 7:26-cv-01803-NSR Document 1-1 Filed 03/05/26 Page 12 of 33

14. To attend Defendant's University, Plaintiff took out a $63,013.50 loan to cover her first-year tuition while she completed Defendant's pre-medical program between September 2022 to December 2022..

15. In January 2023, Plaintiff began her first year of medical school, which is structured into six medical semesters or "systems" focused on a specific area of study, MD1-MD6.

16. At the end of Plaintiff's third medical system on or about December 13, 2023, she was forced to take a four-week study leave after failing two courses.

17. Plaintiff was never subjected to any disciplinary actions or threatened with termination from the program due to her academics.

18. Plaintiff retook her failed exams, passed, and applied for the Congressman John Lewis Equality Memorial Scholarship.

19. On April 17, 2024, Defendant awarded Plaintiff the Scholarship.

20. According to the Scholarship terms, Plaintiff was awarded $5,000 per semester for MD4-MD6, so long as she met the following requirements: 1) resided on Xavier's residential campus, 2) maintained continuous enrollment, 3) no disciplinary actions, and 4) maintained satisfactory academic progression at the discretion of Chief Academic Officer.

21. Between May 2024 and August 2024, Plaintiff's grades drastically improved, and she successfully passed all exams, achieving grades that were at an all-time high demonstrating more than the minimum satisfactory academic progression.

22. Plaintiff complied with all of the Scholarship requirements and significantly improved her grades from when she first started in Fall of 2022.

23. On September 11, 2024, Plaintiff received an email from Jupjeet Kaur, the Chief Compliance Officer asserting that her Scholarship had been revoked due to academic performance, but

3

the email did not specify how Plaintiff's academic performance could have caused her Scholarship to be revoked. .

24. That same day, Plaintiff attended a schoolwide meeting for all students at the University in which faculty told students that Scholarships were being revoked due to academic performance issues.

25. Plaintiff reached out to Defendant's faculty student finance office to inquire about the revocation of her Scholarship and the reason behind the revocation.

26. Plaintiff also sent a letter via email to the Appeal Committee, which emphasized her reliance on the Scholarship tuition money and her academic success in recent months but Defendant failed to respond and she was never notified of the results of her Appeal to the Appeal Committee

27. Plaintiff, thereafter, visited the University finance office to demand a reevaluation of her grades, and spoke with Dr. Kevin Pawlak ("Dr. Pawlak"), the Dean of Premed and member of the scholarship committee, Dr. Gopikumar Gopi ("Dr. Gopi"), and Dr. Arun Kumar Dubey ("Dr. Gopi"), who reached out to the admission headquarters in New York.

28. Dr. Pawlak alleged that Plaintiff's Scholarship was revoked because her grade point average ("GPA") was a 2.7, which was below the required 3.0 requisite.

29. This was the first time Plaintiff was informed about a GPA requirement of 3.0 since the Scholarship requirements did not provide for this requirement.

30. Even more confusing to Plaintiff is that Defendant operates on a pass/fail basis and not on a GPA basis.

31. The alleged 2.7 GPA was never documented, and Plaintiff was provided with no information or documents to support a GPA claim or how a pass/fail would convert to a GPA.

4

Case 7:26-cv-01803-NSR   Document 1-1   Filed 03/05/26   Page 14 of 33

32. Defendant denied making any error and informed Plaintiff that she would become re-eligible if she passed Med 5 and kept up good standing to give her a false sense of security to continue her academics with Defendant instead of withdrawing with the knowledge that if Plaintiff still attended she would need to take loans to pay the University.

33. Despite Plaintiff's academic progress, she was never found to be re-eligible for the Scholarship.

34. Plaintiff was subsequently told she needed to also pass another course, "HEME/onc" in order to become re-eligible for the Scholarship although it was not part of the criteria and how it connected to increasing her GPA was unknown and unexplained.

35. Plaintiff was only informed the "HEME/onc" course required a $5,000 payment within 24 hours.

36. When Plaintiff expressed that she could not afford to make an additional and unplanned $5,000 payment, Defendant insisted that without the payment she would not be able to sit for the "Critical Exam," which was required of all medical students to move onto the next system to proceed in medical school, and to be re-eligible for a Scholarship.

37. As a result, Plaintiff was coerced to pay the $5,000 fee by immediately paying by credit card. In the subsequent system as a result of losing her Scholarship, Plaintiff was forced to take out a loan to pay her tuition to cover the remainder of the semester through Defendant's, Richland Loan (eventually merged with Zunta Fi).

38. On December 26, 2024, Plaintiff was forced to withdraw from the University and transferred to St. James School of Medicine ("St. James") on January 6, 2025, because she was unable to keep up with the financial burden imposed on her and had run out of funds.

39. To transfer, Defendant charge Plaintiff a $100.00 transcript fee, plus a $25 delivery fee.

5

Case 7:26-cv-01801-NSR Document 1-1 Filed 03/05/26 Page 15 of 33

40. Plaintiff currently has a "Launch Loan" with an outstanding principal balance of $7,449.32, on which she makes monthly payments of $68.75.

41. As an incoming student, Plaintiff took the Launch Loan to cover tuition and related expenses for a required Med 5 Review Course semester after transferring to St. James.

42. For the Summer 2025 semester, Plaintiff paid $14,250 in tuition and $14,500 for the Fall 2025 semester.

43. Unable to resolve these issues with Defendant and Defendant having failed and/or refused to remedy same, Plaintiff had no other option but to commence this litigation.

## CAUSES OF ACTION

### AS & FOR THE FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT AS AGAINST ALL DEFENDANTS

44. Plaintiff repeats, reiterates and realleges each of the foregoing allegations from ¶¶ 1-43 as if set forth fully herein.

45. Plaintiff and Defendant entered into a contract on April 17, 2024, when Plaintiff agreed to maintain satisfactory academic progress in exchange for the Congressman John Lewis Equality Memorial Scholarship.

46. The contract between Plaintiff and Defendant was valid and it was mutually understood that in consideration of satisfactory academic performance and compliance with all other requirements, Defendants would cover the cost of tuition until MD4-MD6 under the Scholarship.

47. Promises were made by Defendant to Plaintiff when she was awarded the Scholarship that Defendant would not revoke the Scholarship for any reason if Plaintiff complied with all requirements, including 1) residing on campus, 2) continuous enrollment, 3) no disciplinary action and 4) satisfactory academic progression at the discretion of Chief Academic Officer.

6

48. Plaintiff complied at all times with all of the requirements of the Scholarship

49. Plaintiff substantially performed her obligations as she maintained satisfactory academic performance between May 2024 and August 2024 and complied with all of her other obligations under the contract to receive the Scholarship

50. Defendant materially breached the terms of the contract when it revoked the Scholarship for poor performance, citing a "low GPA" of less than 3.0 although Defendant uses a Pass/Fail grading system, not a GPA system and could not explain who they reached the 2.7 GPA.

51. Defendant's failure to fulfill the contract, and failure to explain or provide proof that Plaintiff did not maintain satisfactory academic performance constitutes a material breach of the Contract.

52. Plaintiff incurred damages from the breach of contract, since Defendant's conduct including the pretext for revoking the Scholarship forced Plaintiff to pay the remainder of the semester out of pocket and within 24 hours pay $5,000, which allegedly covered a Critical Exam fee that Plaintiff was not informed existed.

53. Plaintiff complied with and performed all of her obligations under the contract with Defendant, especially since Plaintiff's grades were at an all-time high at the time of revocation.

**WHEREAS,** the Defendant is liable to Plaintiff for damages in an amount to be determined at trial, but no less than the actual damages incurred under the contract of $5,000.00 to cover the critical exam, and damages for the natural and probable consequence of the breach in having to pay $80,000 to cover out-of-pocket tuition and loan interest, for a total amount of $85,000.00.

**AS & FOR THE SECOND CAUSE OF ACTION FOR UNJUST ENRICHMENT**

7

54. Plaintiff repeats, reiterates and realleges each of the foregoing allegations from ¶¶ 1-53 as if set forth fully herein.

55. Defendant awarded Plaintiff the Congressman John Lewis Equality Memorial Scholarship on April 17, 2024, informing her that she could maintain status as a recipient if she 1) resides on campus, 2) remains continuously enrolled, 3) has no disciplinary action, and 4) achieves satisfactory academic progression at the discretion of Chief Academic Officer.

56. Defendant knew that Plaintiff relied on the financial aid she received from the Scholarship to attend medical school at the University and of the financial burden that would be imposed if she lost the Scholarship.

57. With that knowledge, Defendant guaranteed she would have the Scholarship for the entirety of the semester if she maintained good standing by meeting the requirements.

58. In reliance on Defendant's representations, Plaintiff worked hard to maintain satisfactory academic progression, which she complied with as her academics dramatically improved.

59. Despite compliance, Defendant revoked the Scholarship for no legitimate reason, citing a "low GPA" of less than 3.0 although Defendant uses a Pass/Fail grading system, not a GPA system.

60. Plaintiff notified Defendant that she was in compliance with the Scholarship terms, but notwithstanding Plaintiff's efforts, Defendant failed to reinstate the Scholarship.

61. As a result of the revocation, Plaintiff was induced to remain at the University, pay tuition and apply for University authorized loans to finance her education with the promise of an opportunity for future eligibility, that never came to fruition.

62. Defendant left Plaintiff with no other alternatives, especially since Defendant threatened to remove her from the medical school program if she did not pay.

8

63. Plaintiff reasonably relied on Defendant's representations and as a result of this reliance, Plaintiff spent more money on loans and interest financing for the semester.

64. Defendant refused to cure the error and defrauded Plaintiff, through misrepresentations and enticements to lure her to attend the University under the guise of available Scholarships that never materialized and were revoked leaving her with a financial burden to apply for University loans, or withdraw and discontinue her studies as the only alternative leaving Plaintiff with little choice but to pay Defendant.

**WHEREAS,** Defendants are liable to Plaintiff for damages in an amount to be determined at trial, but no less than the actual damages incurred under the contract $5,000.00 to cover the critical exam, and damages for the natural and probable consequence of the breach in having to pay $80,000 to cover out-of-pocket tuition and loan interest, for a total amount of $85,000.00, and for recovery of Plaintiff's reasonable attorney's fees and costs.

### AS & FOR THE THIRD CAUSE OF ACTION FOR VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349 AND § 350

65. Plaintiff repeats, reiterates and realleges each of the foregoing allegations from ¶¶ 1-64 as if set forth fully herein.

66. Defendant engaged in consumer-oriented services because it engaged in the deceptive advertising of Scholarships guaranteeing financial aid to potential students like Plaintiff including New York residents and is subject to the laws of the State of New York such as the General Business Law as a foreign company registered to do business in New York

67. Defendant advertises, including in New York, that it has available a multitude of different scholarships to provide students with a quality medical education at an affordable price, in which such advertisements were also made in New York and directed to New York residents and residents outside the State of New York.

9

68. Defendant's website states that scholarships are renewable based on continued academic success and that students would not be required to make tuition or loan payments while enrolled.

69. These representations were a major material factor in Plaintiff's decision to attend, as it promised affordability, transparency, and financial security.

70. Defendant knew students like Plaintiff rely on such scholarships to finance their education.

71. As a result of Plaintiff's reasonable reliance, Plaintiff enrolled in the University, took a loan for payment, and was led to believe that if she performed well and continued with maintaining academic progression, she would receive a scholarship.

72. When Plaintiff's grades improved, she expected Defendant to maintain their part of the bargain by continuing her Scholarship, not revoking it suddenly and without warning.

73. When Defendant revoked the Scholarship Plaintiff was forced to take out a University loan to unexpectedly pay for tuition or withdraw.

74. The request for tuition payment while Plaintiff was still enrolled contradicts Defendant's advertisements that states students would not be required to make tuition or loan payments while enrolled.

75. Defendant refused to cure the error and defrauded Plaintiff, through misrepresentation and enticements to lure her under the guise of scholarships that never materialized and leaving Plaintiff with little choice but to pay Defendant by applying for University approved loans.

**WHEREAS,** Defendants are liable to Plaintiff for damages in an amount to be determined at trial, but no less than the actual damages incurred under the contract $5,000.00 to cover the critical exam, and damages for the natural and probable consequence of the breach in having to pay $80,000

10

to cover out-of-pocket tuition and loan interest, for a total amount of $85,000.00, and for recovery of

Plaintiff's reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief as follows with regard to each of the causes of action,

together with such other and further relief as this Court may deem just and proper, and demands

judgment and a jury trial:

(a) On the first cause of action, for an award of damages in an amount to be determined at trial, but no less than the actual damages incurred under the contract of $5,000.00, and the amount of $80,000 to cover out-of-pocket tuition and loan interest, as the natural and probable consequence of the breach, for the total amount of $85,000.00;

(b) On the second cause of action, for an award of damages in an amount to be determined at trial, but no less than the actual damages incurred under the contract of $5,000.00, and the amount of $80,000 to cover out-of-pocket tuition and loan interest, as the natural and probable consequence of the breach, for the total amount of $85,000.00;

(c) On the third cause of action, for an award of damages in an amount to be determined at trial, but no less than the actual damages incurred under the contract of $5,000.00, and the amount of $80,000 to cover out-of-pocket tuition and loan interest, as the natural and probable consequence of the breach, for the total amount of $85,000.00; and

(d) Together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
February 5, 2026

TULLY RINCKEY, PLLC

Hannah Lildharrie, Esq.
Tully Rinckey PLLC
420 Lexington Avenue, Ste. 1601
New York, New York 10170
Phone: (646) 813-2962
Fax (646) 705-0049
Email: hlildharrie@tullylegal.com

*Attorney for Plaintiff Myra Popal*

11

Case 2:26-cv-01819-JSR Document 12-1 Filed 03/05/26 Page 15 of 33

TO:     Xavier University School of Medicine
        1000 Woodbury Rd,
        Woodbury, NY 11797

12

Case 26-01819-NSR Document 12-1 Filed 03/05/26 Page 16 of 33

## VERIFICATION

STATE OF NEW YORK )
                   )     ss.:

COUNTY OF Scott )

    MYRA POPAL being duly sworn, depose and say that she has read the allegations contained in the foregoing Verified Complaint; that to her knowledge the contents are true, except as to matters therein stated to be alleged upon information and belief, and as to those matters she believes them to be true.

 02/04/26

MYRA POPAL

Sworn to before me this

4 day of February 2026

Korey G. Garrison
Notary Public
Minnesota
My Commission Expires 01/31/2030

13

# EXHIBIT 2

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** Orange
-----------------------------------------------------------------x
MYRA POPAL,

                    Plaintiff/Petitioner,

           - against -                                    Index No. EF001198-2026

XAVIER UNIVERSITY SCHOOL OF MEDICINE

                    Defendant/Respondent.
-----------------------------------------------------------------x

## NOTICE OF ELECTRONIC FILING
### (Mandatory Case)
(Uniform Rule § 202.5-bb)

**You have received this Notice because**:

1) The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-filing system ("NYSCEF"), and

2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney:**
Give this Notice to your attorney. (<u>Attorneys</u>: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney:**
**You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

**If you choose to participate in e-filing, you <u>must</u> have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

The **benefits of participating in e-filing** include:

- serving and filing your documents electronically

- free access to view and print your e-filed documents

- limiting your number of trips to the courthouse

- paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit: www.nycourts.gov/efile-unrepresented or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing is Mandatory for Attorneys)**

An attorney representing a party who is served with this notice must either:

1) immediately record his or her representation within the e-filed matter on the NYSCEF site www.nycourts.gov/efile ; or

2) file the Notice of Opt-Out form with the clerk of the court where this action is pending and serve on all parties. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the knowledge to operate such equipment. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: nyscef@nycourts.gov).

Dated: February 6, 2026

Hannah Lildharrie
     Name

Tully Rinckey PLLC

     Firm Name

420 Lexington Avenue, Suite 1601
     Address

New York, NY 10170

646-813-2962
     Phone

hlildharrie@tullylegal.com
     E-Mail

To: Ravishankar Bhooplapur

1000 Woodbury Rd, Ste 109

Woodbury, New York 11797

Index  #                          Page 2  of 2                          6/6/18   EFM-1

# EXHIBIT 3



**STRONKS**
**TRANSLATIONS N.V.**

S-220                          FORMATION

This seventh day of April, ---------------------------------------------------------
two thousand and five, appeared before me, *mr*. Faride Eloisa Elixie Tjon Ajong, civil-law notary practicing in Aruba, in the presence of the two witnesses to be named hereinafter: ---------------------------------------------------
- Mr. Ahmad Kanaan Baroud, director of operations, living at Kaya Sinfonia 2, Kralendijk, Bonaire (Netherlands Antilles). --------------------
The person appearing declared hereby to set aside an amount of ONE HUNDRED ARUBAN FLORINS (Afl. 100.00) and use it for the formation of a foundation, which shall be governed by the following Articles. ------
Name, Domicile and Duration --------------------------------------------------------
Article 1. -------------------------------------------------------------------------
1.1.    The name of the Foundation shall be: ---------------------------------------
        **Stichting "Xavier School of Medicine Foundation".** ---------------
1.2.    The Foundation is domiciled in Aruba. --------------------------------------
1.3.    The Foundation has been formed for an indefinite period of time. -
Objects ------------------------------------------------------------------------------
Article 2. -------------------------------------------------------------------------
The objects of the Foundation shall be: ------------------------------------------
a.      to establish and maintain a training institute for students who wish
        to exercise a medical profession; ------------------------------------------
b,      to organize conventions, seminars, workshops and all kinds of
        courses, whether or not specialized, in the field of medicine in
        general; and -------------------------------------------------------------------
c.      to establish and maintain a medical scientific research institute. --
Means -------------------------------------------------------------------------------
Article 3. -------------------------------------------------------------------------
The Foundation shall endeavor to achieve its objects by: ------------------
a.      making available academically educated and highly qualified
        personnel and material resources; -----------------------------------------
b.      providing an environment that promotes the desire to study; --------
c.      using all lawful means that are conducive to achieving the objects.
Financial Resources -----------------------------------------------------------------
Article 4. -------------------------------------------------------------------------
The financial resources of the Foundation shall consist of the amount set aside at the time of its formation, any contributions, subsidies, collections and gifts to be received, accrued interest and all other lawfully obtained income. ------------------------------------------------------------------------------
Board -------------------------------------------------------------------------------
Distinction in categories ------------------------------------------------------------
Article 5. -------------------------------------------------------------------------
5.1.    The Board of the Foundation shall consist of two (2) Members in
        accordance with the following provisions. ---------------------------
5.2.    The Board Members shall be divided into two (2) categories,
        namely: -------------------------------------------------------------------------

- one (1) Board Member A; and ----------------------------------------
- one (1) Board Members B. ----------------------------------------

5.3. Only natural persons may be appointed Board Members. -----------

Definition ---------------------------------------------------------------------

Article 6. ---------------------------------------------------------------------

In these Articles, the term "Board Members" shall mean both Board Member A and Board Member B, unless the contrary is explicitly stated.

Manner of Appointment ------------------------------------------------------

Article 7. ---------------------------------------------------------------------

7.1. The Board Members shall be appointed by the founder for the first time by the deed of formation. -----------------------------------------

7.2. After the formation of the Foundation, Board Member A shall be appointed by the founder of the Foundation or by the person(s) to whom the right to appoint said Board Member has been transferred in accordance with the provisions of Article 18. --------------------

7.3. After the formation of the Foundation, the successor Board Member B shall be appointed by a resolution adopted by the Board of the Foundation. ------------------------------------------------------------

7.4. If a vacancy arises on Board Membership A or Board Membership B, the person authorized to appoint shall fill this vacancy by appointing a successor within two (2) months after the vacancy has arisen. ------------------------------------------------------------------

7.5. For this purpose, the Board shall notify the person authorized to appoint hereof by letter, telex, fax message, telegram or electronic mail within fourteen (14) days after the vacancy has arisen. -------
If the person(s) authorized to appoint does not fill the vacancy within the period of two (2) months mentioned in this paragraph, the remaining Board Member or the remaining Board Members shall fill the vacancy by unanimously appointing a successor within two (2) months after the period of two (2) months mentioned in this paragraph. -------------------------------------------------------------------
In case of a difference of opinion between the remaining Board Members on the appointment referred to in this paragraph, the vacancy shall be filled by the Judge at the Court of First Instance of Aruba at the request of each interested party, including the founder, or on the demand of the Public Prosecution Service. ----------------

7.6. Board Members shall be appointed for a period of five (5) years, without prejudice to the provision of Article 10, paragraph 2. ------

7.7. A person who has been appointed Board Member shall take up his duties as soon as he accepts his appointment. If that acceptance does not take place within one (1) month after the appointment, the appointment shall be canceled. ---------------------------------------

7.8. If, for any reason whatsoever, one or more Board Members is/are absent, the remaining Board Members or the remaining Board Member shall still constitute a quorum. -------------------------------

7.9. In the absence of a person and/or body authorized to appoint, a new Board shall be appointed by the Judge at the Court of First Instance of Aruba at the request of any interested party, including the founder. ----------------------------------------------------------------

Division of Positions ---------------------------------------------------------

Article 8. ---------------------------------------------------------------------

8.1. Board Member A shall hold the executive position of chairman.----

2



The other executive positions of treasurer and secretary shall be divided among the other Board Members. --------------------------------

8.2.   A Board Member may hold more than one position. -----------------

<u>Remuneration</u> ---------------------------------------------------------------

<u>Article 9.</u> ------------------------------------------------------------------

The Board may grant one or more of its Members a remuneration and/or expense allowance. ------------------------------------------------------------

<u>End Board Membership</u> ------------------------------------------------------

<u>Article 10.</u> -----------------------------------------------------------------

10.1.   The Board Membership shall end: --------------------------------------
    a.   in case of written resignation; -------------------------------------
    b.   in case of death of, a conservatorship order against or bankruptcy of the Board Member; ----------------------------------
    c.   by replacement of a Board Member pursuant to a decision made by the person authorized to appoint; -----------------------------
    d.   by expulsion of the Board Member by unanimous resolution of the Board, if the person concerned acts contrary to the objects of the Foundation, its Articles and resolutions of the Board, or if the person concerned harms or has harmed the Foundation in an unreasonable manner or has grossly neglected his official duty. -------------------------------------------------------------------
       In the case referred to in subparagraph d., the Board Member concerned may not take part in the voting; and ------------------
    e.   by periodic retirement of the Board Member as referred to in Article 7, paragraph 6. --------------------------------------------

10.2.   The resolution to expel a Board Member shall be adopted by the Board at a Board meeting especially convened for this purpose, at which the other two Board Members are present or represented. ---- If the person concerned is abroad, the period to convene this meeting shall be extended by four (4) weeks. The resolution to expel cannot be adopted before the Board Member concerned has been given the opportunity to express his opinion. ------------------------------------

<u>Administrative Authority</u> --------------------------------------------------

<u>Article 11.</u> -----------------------------------------------------------------

11.1.   With due observance of the Articles, the Board shall be authorized to perform all acts of administration and disposition, provided they fall within the objects of the Foundation. ----------------------------

11.2.   Without the prior permission in writing of the founder or the person(s) to whom he has transferred this right of approval, the Board shall not be authorized to adopt resolutions: -----------------
    a.   to alienate and/or pledge the equipment and/or study or scientific materials belonging to the Foundation; ----------------
    b.   to enter into lease agreements, loan agreements or to provide guarantees. ------------------------------------------------------------
       To this end, the Board of the Foundation shall send the proposal in question by letter, telex, fax message, telegram or electronic mail to the founder or to the person(s) to whom he has transferred the right of approval at least one (1) month before the Board meeting referred to in paragraph 3 of this Article. -- Within two (2) weeks after receipt of the letter referred to in the previous sentence, the latter shall inform the Board of the

3



Foundation, also by letter, telex, fax message, telegram or electronic mail, whether or not he approves the proposal. ------ If the Board of the Foundation has not received a letter of approval from the founder or from the person(s) to whom he has transferred this right within the period set out in the previous sentence, the founder or the person(s) to whom he has transferred this right shall be deemed to have given his approval to the proposal in question. -----------------------------------------

11.3. After obtaining the required written approval of the founder or of the person(s) to whom the right of approval has been transferred, Board resolutions - as referred to above in paragraph 2 - can only be adopted by an absolute majority of votes at a Board meeting at which all Board Members are present. ---------------------------------

Representation ---------------------------------------------------------------------

Article 12. -------------------------------------------------------------------------

The Foundation shall be represented at law and otherwise by Board Member A. ---------------------------------------------------------------------------

Board Meeting ---------------------------------------------------------------------

Article 13. -------------------------------------------------------------------------

13.1. The Board shall meet every three months. -----------------------------

13.2. Meetings shall also be held whenever the chairman deems so desirable, or if the two other Board Members request the chairman to do so in writing, accurately stating the business to be transacted. If the chairman does not comply with this request, the persons making the request shall be authorized to convene a meeting themselves with due observance of the formalities required. -------

13.3. The meeting shall be convened by the chairman at least fourteen (14) days in advance by written notices by airmail, courier, telex, fax, telegram or electronic mail. ------------------------------------------------

13.4. These written notices shall state the business to be transacted in addition to the location and time of the meeting. --------------------

13.5. As long as all Board Members are present at a Board meeting, valid resolutions may be adopted on any business transacted, provided they are adopted unanimously, even if the provisions with regard to convening and holding meetings laid down in the Articles have not been observed. ------------------------------------------------------------------

13.6. The meetings shall be chaired by the chairman; in his absence, the meeting itself shall appoint its chairman. -----------------------------

13.7. Minutes shall be kept of the business transacted at the meeting.---- The minutes shall be signed by the chairman and the secretary after having been adopted by the Board. -----------------------------------------

Adopting Resolutions -------------------------------------------------------------

Article 14. -------------------------------------------------------------------------

14.1. Except in the cases in which the Articles explicitly provide otherwise, the Board shall adopt its resolutions by absolute majority of votes at a meeting at which at least an absolute majority of the total number of Board Members in office is present. ----------------

14.2. Board Member A shall have nine (9) votes and Board Member B shall be entitled to cast one (1) vote. ----------------------------------

14.3. Blank votes shall not count when determining the majority. --------

4



14.4. Voting can take place both orally and in writing. Written voting shall take place in case of votes on persons and in other cases if desired by one or more Members. ---------------------------------------- Voting by proxy shall not be possible. --------------------------------

14.5. In the event of a tied vote on persons, a second vote shall be held. In the event of a tie in the second vote, the decision shall be postponed to the next Board meeting. Should there be another tie, the chairman shall decide. --------------------------------------------------

14.6. The Board may also adopt resolutions without holding a meeting, provided that all Board Members have been given the opportunity to express their opinion in writing by telegram, telex, fax message or electronic mail. The secretary shall draw up a report of a resolution adopted in this way, adding the answers received, which report shall be attached to the minutes after co-signing by the chairman. -----------------------------------------------------------------

Financial Year and Annual Report and Accounts ---------------------------
Article 15. ---------------------------------------------------------------------

15.1. The financial year of the Foundation shall coincide with the calendar year, except that the first financial year shall start on the day of formation. -------------------------------------------------------------------

15.2. Within nine months after the end of a financial year, the treasurer shall prepare a statement of assets and liabilities at the end of the financial year, as well as a statement of income and expenditure in respect of the financial year. The Board shall adopt these documents. This adoption without reservation shall discharge the treasurer with regard to the management conducted by him in the past financial year, provided this is evidenced by the documents. --

Amendment to the Articles --------------------------------------------------------
Article 16. ---------------------------------------------------------------------

16.1. The Board shall be authorized to amend these Articles with due observance of the provisions of the following paragraphs. ----------

16.2. The resolution to amend the Articles shall be adopted by a majority of at least two-thirds (2/3) of the votes validly cast at a meeting at which all Board Members are present.----------------------------------

16.3. If the required quorum is not met at the meeting convened, a resolution to amend the Articles or to dissolve the Foundation may be adopted at a meeting convened for the same purpose within one month, but at least one week later, by a majority of at least two-thirds (2/3) of the votes, irrespective of the number of Board Members present.-------------------------------------------------------

16.4. On pain of nullity, the amendment shall be laid down in a notarial deed. -------------------------------------------------------------------

16.5. A resolution to amend the Articles can only be adopted after the proposal to amend the Articles has been approved in writing by the founder or by the person(s) to whom he has transferred the right of approval. ---------------------------------------------------------------- To this end, the Board of the Foundation shall send the proposal in question by letter, telex, fax message, telegram or electronic mail to the founder or to the person(s) to whom the latter has transferred the right of approval at least one (1) month before the meeting at which the amendment of the Articles is to be proposed.--------- Within four (4) weeks after receipt of the letter referred to in the

5



previous sentence, the latter shall inform the Board of the Foundation by letter, telex, fax message, telegram or electronic mail whether or not he approves the proposal to amend the Articles. If the Board of the Foundation has not received a letter in this respect from the founder or from the person(s) to whom the latter has transferred this right within the period specified in the previous sentence, the founder or the person(s) to whom he has transferred the right of approval shall be deemed to have approved the proposal to amend the Articles. -----------------------------------------------------

Dissolution and Liquidation -----------------------------------------------------

Article 17. -----------------------------------------------------

17.1. The Board shall be authorized to dissolve the Foundation. The provisions of Article 16, paragraphs 2, 3, 4 and 5, shall equally apply to the resolution to that effect, and, insofar as paragraph 5 is concerned, the words amendment to the Articles shall be replaced by dissolution. -----------------------------------------------------

17.2. The Foundation shall continue to exist after its dissolution insofar as this is necessary to liquidate its assets. -----------------------------

17.3. The Board shall be responsible for the liquidation. -------------------

17.4. During the liquidation, the provisions of the Articles shall remain in force as much as possible. -----------------------------------------------------

17.5. Any positive balance of the dissolved Foundation shall be allocated as much as possible to a legal entity with the same objects as the Foundation. -----------------------------------------------------

Transfer of Rights -----------------------------------------------------

Article 18. -----------------------------------------------------

18.1. The founder shall be authorized to waive the rights to which he is entitled pursuant to the provisions of Article 7, paragraph 2, Article 11, paragraph 2, and Article 16, paragraph 5, with immediate effect or with effect from a date to be determined by him, and to designate one or more (legal) persons to whom these rights shall pass. -------

18.2. The person(s) designated as (a) successor(s) shall also have the power to waive rights and to appoint successor(s) as referred to in the preceding paragraph. -----------------------------------------------------

18.3. The waiver of rights referred to in this Article and the appointment of successor(s) by the founder or by one of his successors shall be laid down in a notarial deed. -----------------------------------------------------

18.4. The Board is obligated to file a copy of the notarial deed referred to in the previous paragraph with the office of the Register of Foundations kept by the Chamber of Commerce and Industry in Aruba. -----------------------------------------------------

Final Provision -----------------------------------------------------

Article 19. -----------------------------------------------------

In all cases not provided for by law, nor by the Articles or the Bylaws, the Board shall decide. -----------------------------------------------------

FINAL DECLARATION -----------------------------------------------------

Finally, the person appearing declared: -----------------------------------------------------

- that in fulfillment of the provisions of Article 7 paragraph 1, the following Board Members shall be appointed for the first time: ---
    -
    - as Board Member A: Mr. Ahmad Kanaan Baroud, aforementioned, as chairman and treasurer; -----------------------------------------------------

6

- as Board Member B: Mr. Chaudhry Abdul Mannan, living in Lahore (Pakistan), born on the twenty-third day of May, nineteen hundred and seventy-four in Multan, Pakistan, as secretary; -------
- that the first financial year of the Foundation shall end on the thirty-first day of December, two thousand and five. ----------------

IN WITNESS WHEREOF, THIS DEED WAS DRAWN UP IN ONE ORIGINAL COPY, executed in Aruba, the day first written above, in the presence of Ms. Cheryl Elizabeth Sandra Trim and Ms. Nadia Priscilla Janati, both office assistants and both living in Aruba, as witnesses, who, as is the person appearing, are known to me, civil-law notary. ------------
Signatures follow.

ISUED AS A TRUE COPY:

[was signed:]
*mr.* F.E.E. Tjon Ajong,
the civil-law notary

[Stamp:]
*MR.* F.E.E. TJON AJONG
CIVIL-LAW NOTARY in ARUBA

THIS TEXT HAS BEEN TRANSLATED FROM Dutch
BY AC van Vliet
AND CONSISTS OF 7 PAGE(S)
ARUBA, 1 2 NOV 2018

7